UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jarrell Wilson

   v.                                    Case No. 19-cv-1064-PB

Michelle Edmark, N.H. State Prison
Warden; Nicholas Patten; Fran Reed;
Sgt. Peter Picone; Maj. Jon Fouts;
N.H. Department of Corrections Hearings
Officer Linda Paulson; Capt. FNU Boynton;
and Lt. Troy Fontaine

REPORT AND RECOMMENDATION

Before the court is the complaint (Doc. No. 1) filed by Jarrell Wilson, an inmate at the Northern New Hampshire Correctional Facility ("NCF") who was an inmate at the New Hampshire State Prison ("NHSP") when he filed this action. The complaint (Doc. No. 1) and several addenda to the complaint (Doc. Nos. 3, 4, 6) are before the court for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a). Also before the court are two motions seeking preliminary injunctions (Doc. Nos. 3, 4), which have been referred to the undersigned magistrate judge for a report and recommendation. See July 10, 2020 Order.

I.   Preliminary Review

   A.   Standard

The court may dismiss claims asserted in an inmate's

complaint, if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To determine whether to dismiss claims for failure to state a claim, the court takes as true the factual content in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether plaintiff has stated a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

B. Background

On April 4, 2019 at 5:00 a.m., while eating breakfast at the chow hall in the NHSP, in the presence of three or four corrections officers ("COs"), including Sgt. Peter Picone, CO Fran Reed, and/or CO Nicholas Patten, an unidentified inmate came up behind Mr. Wilson and "suckerpunched" him, that is, struck him without warning or provocation.[1] As Mr. Wilson

---

[1] Exhibits filed in Wilson v. N.H. State Prison Warden, No. 1:19-cv-786-JL (D.N.H.) ("Wilson I"), indicate that the incident

started to react, he asserts, someone jumped on his back.  Mr. Wilson alleges that his head slammed against the table, cracking his jaw.  Unaware that it was NHSP Sgt. Peter Picone on his back, Mr. Wilson struggled to knock him off and sent the officer flying into what Mr. Wilson calls a "juice container."  Mr. Wilson was charged with the disciplinary offense of causing bodily harm, as a result of that incident.  Mr. Wilson's jaw broke, necessitating surgical repairs.  He continued to suffer pain, traumatic dreams, and disrupted sleep as a result of the incident, for which he was prescribed medication (Prazosin).

After the incident in the chow hall, corrections officers brought Mr. Wilson to the Special Housing Unit ("SHU") to await further proceedings.  Although an unidentified CO told Mr. Wilson that, from the description in the disciplinary report, it looked like he had acted in self-defense and could count on being released out of SHU, the disciplinary charges were not dismissed.  Mr. Wilson appeared before Hearings Officer Linda Paulson and was found guilty of the disciplinary offense of causing bodily injury.  The sanction imposed on Mr. Wilson

---

occurred on April 4, 2019.  See, e.g., Nov. 18, 2019 Am. Compl., Exs. 1, 4, Wilson I (ECF Nos. 13-1, 13-4).

included SHU confinement for up to nine months.[2]

C. Claims

The claims asserted by Mr. Wilson are the following:

1. In jumping on Mr. Wilson and causing his head to strike a table, breaking his jaw, defendant Sgt. Peter Picone violated:

    a. Mr. Wilson's Eighth Amendment right not to be subjected to excessive force, applied maliciously and sadistically, and not in good faith to maintain or restore discipline; and

    b. Mr. Wilson's Fourteenth Amendment right to equal protection.

2. Defendants NHSP Warden Michelle Edmark, NHSP CO Fran Reed, NHSP CO Nicholas Patten, and NHSP Sgt. Peter Picone violated Mr. Wilson's Eighth Amendment right to avoid cruel and unusual punishment, by failing to protect him from the sucker-punch in the chow hall.

3. By pursuing disciplinary proceedings based on false charges that did not acknowledge that Mr. Wilson had acted in self-defense, defendants NHSP Warden Michelle Edmark, DOC HO Linda Paulson, NHSP Capt. Boynton, NHSP Lt. Troy Fontaine, NSHP Maj. Jon Fouts, and NHSP Sgt. Peter Picone violated:

    a. Mr. Wilson's Fourteenth Amendment right to due process; and

---

[2] In another case, Wilson I, Mr. Wilson alleged that after the April 4, 2019 incident, he spent 5½ weeks in the NHSP medical unit. See July 26, 2019 Compl., Wilson I (ECF No. 1, at 3). In a motion/complaint addendum (Doc. No. 4) filed in this case in October 2019, Mr. Wilson alleged that he "has to do nine (9) month[s] in SHU." He was transferred to the Northern New Hampshire Correctional Facility, approximately nine months after the April 2019 incident. See Jan. 15, 2020 Notice (Doc. No. 7).

   b. Mr. Wilson's Fourteenth Amendment right to equal protection.

D. <u>Discussion</u>

 1. <u>Excessive Force (Claim 1(a))</u>

Under the Eighth Amendment, an excessive force claim "'has two components -- one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.'" <u>Staples v. Gerry</u>, 923 F.3d 7, 13 (1st Cir. 2019) (citations omitted). "The subjective prong turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Id.</u> (citations omitted). While an inmate must also show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," <u>id.</u> (internal quotation marks and citations omitted), an inmate need not prove a "'significant injury' in order to state an excessive force claim," <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 36-37 (2010) (citation omitted).

> The "factors" that "are relevant to that ultimate determination" include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials," "the need for the application of force," "the relationship between the need and the amount of force that was used," "the extent of the injury inflicted," and "any efforts made to temper the severity of a forceful response."

Staples, 923 F.3d at 13 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Applying the relevant factors to the facts alleged by Mr. Wilson, the court concludes that Mr. Wilson has stated an Eighth Amendment excessive force claim upon which relief can be granted, as to Sgt. Picone's use of force in the chow hall on April 4, 2019. In the Order issued this date, the court has directed Sgt. Picone, in his individual capacity, to file a response to Claim 1(a).

  2.  Failure to Protect (Claim 2)

Under the Eighth Amendment, "[p]rison officials have a duty to . . . 'take reasonable measures to guarantee the safety of the inmates.'" Giroux v. Somerset Cty., 178 F.3d 28, 31 (1st Cir. 1999) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To state a claim that an officer failed to protect an inmate in violation of the Eighth Amendment, the inmate must allege facts showing that the officer was deliberately indifferent to his health or safety. See Farmer, 511 U.S. at 834. A prison official or officer is not deliberately indifferent to an inmate's safety "unless the official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

With respect to his failure-to-protect claim, Mr. Wilson has pleaded facts indicating that three or four corrections officers were in attendance in the chow hall when an unidentified inmate came up behind Mr. Wilson and unexpectedly punched him. The facts alleged provide no details regarding that inmate's known proclivities or past conduct that could have alerted any named defendant to a risk he could strike Mr. Wilson without warning. The allegations in the complaint regarding the "suckerpunch" do not state a claim of deliberate indifference to a known risk of serious harm, in violation of Mr. Wilson's Eighth Amendment rights. Accordingly, Claim 2 should be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### 3.   Due Process (Claim 3(a))

To establish that his due process rights have been violated, a plaintiff must demonstrate that he has suffered a deprivation of a protected interest in life, liberty, or property. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "A liberty interest may arise from the Constitution itself, by

reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). As a general matter, however, inmates do not have a constitutional right or protected interest in any particular institutional classification, placement, or eligibility for rehabilitative programming. See Riley v. O'Brien, No. 16-11064-LTS, 2016 U.S. Dist. LEXIS 120039, at *17-18, 2016 WL 8679258, at *6 (D. Mass. Sept. 6, 2016); see also Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974) (absent unusual circumstances, inmates do not have right to any particular security classification). The Due Process Clause itself does not provide a basis for Wilson to ground any protected liberty interest in challenging his transfer to SHU.

Where prison disciplinary sanctions impose an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" courts may find a protected liberty interest arising under state policies or regulations. Wilkinson, 545 U.S. at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Courts applying Sandin, however, have concluded that the loss of a favorable security classification and a transfer to a restrictive housing unit for nine months are not atypical and significant hardships relative to the ordinary

incidents of prison life. See, e.g., Pona v. Weeden, No. 16-612 S, 2017 U.S. Dist. LEXIS 121093, at *15-16, 2017 WL 3279012, at *6 (D.R.I. June 29, 2017) ("courts . . . have repeatedly held that placement in punitive segregation for up to one year is not sufficient to implicate a liberty interest" (citing cases)), R&R adopted, 2017 U.S. Dist. LEXIS 120544, 2017 WL 3278874 (D.R.I. Aug. 1, 2017); see also Hamner v. Burls, 937 F.3d 1171, 1180 (8th Cir. 2019) (203-day administrative segregation did not did not present atypical and significant hardship); Dawson v. Norwood, No. 1:06-CV-914, 2008 U.S. Dist. LEXIS 115077, 2008 WL 7866181, at *6 (W.D. Mich. Sept. 16, 2008) (nine month administrative segregation was not atypical and significant hardship (citing cases)), R&R adopted, 2010 U.S. Dist. LEXIS 54306, 2010 WL 2232355 (W.D. Mich. June 1, 2010). Cf. Graham v. Fortier, No. 10-CV-332-JL, 2010 WL 11404450, at *9, 2010 U.S. Dist. LEXIS 126814, at *26 (D.N.H. Nov. 15, 2010) ("New Hampshire law 'does not give [an inmate] a right to any particular custody status[,] and a change in custody status is not the type of 'atypical and significant hardship' from which a prisoner is entitled to protection under the due process clause'" (citations omitted)), R&R approved, 2011 WL 1237668, 2011 U.S. Dist. LEXIS 36869 (D.N.H. Apr. 4, 2011).

The duration and conditions of Mr. Wilson's SHU placement are not described in terms that render such cases inapposite. Mr. Wilson has alleged that while in SHU, he had access to two hours of out-of-cell time daily. Doc. No. 4, at 1. And he has further alleged he received mental health care, including prescription medication, for his trauma symptoms while in SHU. Cf. Orr v. Larkins, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (nine months in administrative segregation that led to a deterioration of the inmate's mental health was not atypical or significant hardship, where inmate received mental health treatment); Bealer v. Kern Valley State Prison Classification Comm., No. 1:18-cv-01170-DAD-SAB (PC), 2019 WL 5448300, at *16, 2019 U.S. Dist. LEXIS 185207, at *14 (E.D. Cal. Oct. 24, 2019) (sixteen month "disciplinary and administrative segregation" did not impose atypical and significant hardship, absent further allegations contrasting disciplinary and administrative segregation conditions with those in "general population, protective custody, or segregated housing"), R&R adopted, 2019 U.S. Dist. LEXIS 217614, 2019 WL 6894049 (E.D. Cal. Dec. 17, 2019). The district judge should thus dismiss Claim 3(a), for failure to state a due process claim upon which relief can be granted.

    4.   Equal Protection (Claims 1(b), 3(b))

The Fourteenth Amendment Equal Protection Clause dictates "that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (citation omitted). To assert an equal protection claim, a plaintiff must state facts sufficient to show that, as compared to others similarly situated, the plaintiff was treated differently based on an improper consideration. See id. at 78.

Mr. Wilson has claimed that defendants Sgt. Peter Picone, in subjecting him to a use of force on April 4, 2019, and the defendants named in Claim 3(b), in subjecting him to disciplinary proceedings arising from that incident, violated his equal protection rights. There are, however, no allegations in the complaint suggesting that any similarly situated inmate has been treated more favorably than Mr. Wilson, with respect to the use of force or disciplinary proceedings. Absent any allegations regarding a comparator or other factual allegations regarding discrimination that could form the basis of a claim that Mr. Wilson was treated differently on some improper basis, Claims 1(b) and 3(b) fail to state plausible claims for relief. Accordingly, the district judge should dismiss Claims 1(b) and 3(b), for failure to state a Fourteenth Amendment equal protection claim upon which relief can be granted.

II. <u>Preliminary Injunction Motions (Doc. Nos. 3, 4)</u>

Mr. Wilson filed two motions, each entitled "Motion for Expedited Ruling," which this court liberally construes as requesting preliminary injunctive relief. Those motions have been referred to the undersigned magistrate judge for a recommendation as to their disposition.

   A.   <u>Preliminary Injunction Standard</u>

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" <u>Glossip v. Gross</u>, 135 S. Ct. 2726, 2736 (2015) (citation omitted). The likelihood of success and irreparable harm are the factors that weigh most heavily in the analysis. <u>See</u> <u>Esso Std. Oil Co. v. Monroig-Zayas</u>, 445 F.3d 13, 18 (1st Cir. 2006); <u>see also</u> <u>Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." <u>Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To</u>

12

Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). The burden of proof is on the movant. See Esso Std. Oil Co., 445 F.3d at 18.

B.   Irreparable Harm (Doc. Nos. 3, 4)

In Document No. 3, Mr. Wilson alleges that he has suffered from traumatic dreams and disrupted sleep as a result of the April 4, 2019 incident. He states that he has been diagnosed with an acute stress disorder and is receiving treatment for his symptoms. He has moved for court-ordered relief, directing that he be transferred into the NHSP Residential Treatment Unit ("RTU") to participate in rehabilitative programming, as he believes he will have a better opportunity for recovery through such treatment. In Document No. 4, Mr. Wilson moves for a court order directing that he be released from SHU into the general prison population.

Since Mr. Wilson filed this motion, his SHU confinement has ended. Mr. Wilson was transferred to NCF in January 2020. See Jan. 15, 2020 Notice (Doc. No. 7). Therefore, to the extent Mr. Wilson seeks release from SHU, his motion in that regard (Doc. No. 4) should be denied as moot.

In addition, for reasons stated in this Report and Recommendation, Mr. Wilson has failed to plead facts sufficient to state any viable Eighth Amendment failure-to-protect claim,

Fourteenth Amendment equal protection claim, or Fourteenth Amendment due process claim, with respect to the April 4, 2019 incident, or the disciplinary proceedings that followed. Mr. Wilson has failed to demonstrate any likelihood of success on the merits of those claims.

With respect to his Eighth Amendment excessive force claim that has been allowed to proceed against Sgt. Picone in his individual capacity, Mr. Wilson's claim of irreparable harm is speculative. He has not provided this court with any facts suggesting that he is a suitable candidate for an RTU placement or that the mental health treatment he is presently receiving, in the absence of a court order, will not address his mental health condition. He has also failed to show that damages would not suffice to make him whole on that claim. Cf. Charlesbank Equity Fund II, 370 F.3d at 162 ("Irreparable harm most often exists where a party has no adequate remedy at law."). Accordingly, the district judge should deny both of Mr. Wilson's motions for expedited rulings (Doc. Nos. 3, 4), to the extent they seek transfers, without prejudice to Mr. Wilson's ability to file a similar motion if his circumstances change, upon a showing of irreparable harm, a likelihood of success on the merits, and satisfaction of the remaining relevant factors.

## Conclusion

For the foregoing reasons the magistrate judge recommends as follows:

    1.   The district judge should approve this Report and Recommendation and dismiss Claims 1(b), 2, 3(a), and 3(b), as numbered above, for failure to state a claim upon which relief can be granted.

    2.   The district judge should deny Mr. Wilson's two motions for expedited rulings (Doc. Nos. 3, 4), without prejudice.

    3.   The district judge should direct that the following parties be dropped as defendants: Michelle Edmark, NHSP Warden; NHSP Corrections Officers Nicholas Patten and Fran Reed; NHSP Maj. Jon Fouts; N.H. Department of Corrections Hearings Officer Linda Paulson; NHSP Capt. Boynton; and NHSP Lt. Troy Fontaine, as there are no viable claims stated in the action against them.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). That period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                _____
                                                Andrea K. Johnstone
                                                United States Magistrate Judge

July 13, 2020

cc: Jarrell Wilson, pro se